CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Jose Estrada** | **Case No**. |
| Plaintiff, | **Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |
| v. | |
| **SA Recycling, LLC,** a Delaware Limited Liability Company; and Does 1-10, | |
| Defendants. | |

Plaintiff Jose Estrada complains of Defendants SA Recycling, LLC and Does 1-10, ("Defendants") and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility. He drives a van with an electric ramp and uses portable hand controls.

2. In June 2015, Defendant SA Recycling, LLC, was the real property owner of the property located at or about 12428 Center Street, South Gate, California.

3. Defendant SA Recycling, LLC, is the current real property owner of the

Complaint

property located at or about 12428 Center Street, South Gate, California.

4. In June 2015, Defendant SA Recycling, LLC, was the business owner of SA Recycling, located at or about 12428 Center Street, South Gate, California ("SA Recycling").

5. Defendant SA Recycling, LLC, is the current business owner of SA Recycling.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

2

Complaint

**FACTUAL ALLEGATIONS:**

10. SA Recycling is a facility open to the public, a place of public accommodation, and a business establishment.

11. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of SA Recycling.

12. And, although Defendants offered a parking space marked and reserved for persons with disabilities in June 2015, it was not in compliance with the Americans with Disabilities Act Accessibility Guidelines (ADAAG).

13. In June 2015, the signage bearing the International Symbol of Accessibility was not mounted so that its bottom edge was more than 80 inches above the parking surface.

14. In June 2015, the parking space marked and reserved for persons with disabilities did not have the required "Minimum Fine $250" signage.

15. In June 2015, the parking space marked and reserved for persons with disabilities did not have the required tow away signage.

16. In June 2015, the parking space marked and reserved for persons with disabilities did not have the wheelchair logo painted on its surface.

17. In June 2015, the parking space marked and reserved for persons with disabilities did not have an access aisle.

18. And, on information and belief, Plaintiff alleges that in June 2015, Defendants had a practice of using the disabled space to store push carts and other equipment.

19. On information and belief, Plaintiff alleges that in June 2015, Defendants did not have a policy or procedure in place to ensure that the parking space marked and reserved for disabled patrons was clear of debris and able to be used.

20. Defendants currently offer a parking space marked and reserved for

Complaint

persons with disabilities, but it is not in compliance with the ADAAG.

21. Currently, the signage bearing the International Symbol of Accessibility is not mounted so that its bottom edge is more than 80 inches above the parking surface.

22. Currently, the parking space marked and reserved for persons with disabilities does not have the required "Minimum Fine $250" signage.

23. Currently, the parking space marked and reserved for persons with disabilities does not have the required tow away signage.

24. Currently, the parking space marked and reserved for persons with disabilities does not have the wheelchair logo painted on its surface.

25. Currently, the parking space marked and reserved for persons with disabilities does not have an access aisle.

26. On information and belief, Plaintiff alleges that Defendants currently have a practice of using the disabled space to store push carts and other equipment.

27. On information and belief, Plaintiff alleges that Defendants do not currently have a policy or procedure in place to ensure that the parking space marked and reserved for disabled patrons is clear of debris and able to be used.

28. Paths of travel are anther one of the facilities, privileges, and advantages offered by Defendant to patrons of SA Recycling.

29. In June 2015, there was no path of travel from the disabled parking space to the entrance at SA Recycling.

30. In June 2015, the ramp from the sidewalk to the entrance was longer than 6 feet but did not have handrails.

31. In June 2015, the ramp to the entrance terminated at the door and did not have a landing.

32. Additionally, in June 2015, the entrance door hardware was a traditional twisty-style knob that required tight grasping and twisting of the

4

wrist to operate.

33. Currently, there is no path of travel from the disabled parking space to the entrance at SA Recycling.

34. Currently, the ramp from the sidewalk to the entrance is longer than 6 feet but does not have handrails.

35. Currently, the ramp to the entrance terminates at the door and does not have a landing.

36. Currently, the entrance door hardware is a traditional twisty-style knob that requires tight grasping and twisting of the wrist to operate.

37. Transaction counters are another one of the facilities, privileges, and advantages offered by Defendant to patrons of SA Recycling.

38. Unfortunately, in June 2015, the transaction counter was more than 36 inches in height.

39. In June 2015, there was no lowered, 36-inch or lower portion of the transaction counter for use by persons with disabilities.

40. The transaction counter is currently more than 36 inches in height.

41. Currently, there is no lowered, 36-inch or lower portion of the transaction counter for use by persons with disabilities

42. Portable restrooms are another one of the facilities, privileges, and advantages offered by Defendants to patrons of SA Recycling.

43. However, the portable restroom at SA Recycling is not accessible to persons with disabilities.

44. In June 2015, the portable restroom was on a raised platform for which there was no ramp or lift.

45. In June 2015, the door to the portable restroom measured less than 32 inches in width.

46. In June 2015, the portable restroom had a turning diameter less than 60 inches.

Complaint

47. The portable restroom is currently on a raised platform for which there is no ramp or lift.

48. The door to the portable restroom currently measures less than 32 inches in width.

49. The portable restroom currently has a turning diameter less than 60 inches.

50. Plaintiff visited SA Recycling in June 2015.

51. Plaintiff has made several more visits since June 2015; approximately once per month.

52. Plaintiff personally encountered these violations and they denied him full and equal access.

53. These barriers caused Plaintiff great difficulty and frustration.

54. Plaintiff would like to return and patronize SA Recycling but will be deterred from visiting until the defendants cure the violations.

55. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

56. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

57. Given the obvious and blatant violation, the plaintiff alleges, on

Complaint

information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

58. Plaintiff is and has been deterred from returning and patronizing SA Recycling because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize SA Recycling as a customer once the barriers are removed.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendant.) (42 U.S.C. section 12101, et seq.)

59. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

60. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

        a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or

Complaint

accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

b.  A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

c.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

61. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (□) in white on a blue background. *Id.* It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. *Id.* Signs must be posted so that they cannot be obscured by a vehicle

8

Complaint

parking in the space. *Id.* An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. *Id.* Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. *Id.* Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (☐) that is 36 inches by 36 inches. *Id.*

62. Here, the failure to properly mount the ISA sign is a violation of the ADA.

63. Here, the failure to post the required fine signage is a violation of the ADA.

64. Here, the failure to post the required tow-away signage is a violation of the ADA.

65. Here, the failure to paint the handicap logo on the surface of the space is a violation of the ADA.

66. Here, the parking simply failed to comply.

67. Each accessible parking stall must have an access aisle adjacent to it. Standard accessible parking stalls can have a 60 inch wide access aisle while van accessible stalls must have a 96 inch wide access aisle. 1991 Standards § 4.1.2(5)(a)&(b) and 2010 Standards § 502.2.

68. Here, the failure to have an access aisle is a violation of the ADA.

69. Under the ADA, there must be an accessible route within the boundary of the site from the accessible parking to the accessible building entrance they serve. 1991 Standards § 4.3.2(1); 2010 Standards § 206.2.The accessible route shall, to the maximum extent feasible, coincide with the route for the general public. *Id.* Travel in the vehicular drive path with vehicles is not part of an accessible route.

70. Here, the failure to provide an accessible route is a violation of the ADA.

71. If a ramp run has a rise greater than 6 inches or a horizontal projection greater than 6 feet, then it must have handrails on both sides. 1991 Standards § 4.8.5; 2010 Standards § 405.8.

72. Here, the failure to provide handrails on the ramps at the front entrance is a violation of the ADA.

73. Ramps must have a level landing at both the bottom and top of the ramp. 1991 Standards § 4.8.4.

74. Here, the failure to provide a level landing at the top of the ramp to the entrance is a violation of the ADA.

75. Under the ADA, there must be an accessible route of travel from the boundary of the site, i.e., from the public street and public sidewalks at the "site arrival points" to the building entrances on the site. 1991 Standards (1991 Standards) § 4.1.2(1); 2010 Standards (ADAAS) § 206.2.1.

76. Here, the failure to provide an accessible path of travel from the sidewalk is a violation of the ADA.

77. Door hardware must have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.13.9; 2010 Standards § 404.2.7.

78. Here the failure to provide such door hardware is a violation of the ADA.

79. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service

10

Complaint

counter top. 2010 Standards § 904.4 & 904.4.1.

80. Here, no such accessible transaction counter has been provided in violation of the ADA.

81. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. 1991 Standards § 4.3.2. To be considered an accessible route, there cannot be a stair or step. 1991 Standards § 4.3.8. Any such change in level measuring greater than ½ inch must have a ramp or lift. *Id.* 2010 Standards § 303.4.

82. Here, the portable restroom is on a platform that does not have a ramp or lift, in violation of the ADA.

83. All doors to restrooms must have a minimum clear opening of 32 inches with the door open 90 degrees, measured between the face of the door and the opposite stop. 1991 Standards § 4.22.2; 4.13.5; 2010 Standards § 404.2.3.

84. Here, the failure to provide the 32 inch wide restroom doorway opening is a violation of the ADA.

85. In order for a bathroom to be considered accessible, it must provide unobstructed 60 inches in diameter of turning space. 1991 Standards § 4.23.3; 4.2.3; 2010 Standards § 603.2.1; 304.3.1.

86. Here, there is no such turning radius and the restroom is not accessible.

87. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

88. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

89. Given its location and options, plaintiff will continue to desire to patronize SA Recycling but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

90. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

91. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

92. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this court award damages and provide relief as follows:

1. For injunctive relief, compelling defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; Cal. Civ. Code § 52.

Complaint

Dated: April 21, 2016             CENTER FOR DISABILITY ACCESS

                                  By: _____
                                  Mark Potter, Esq.
                                  Attorneys for Plaintiff

13

Complaint